**25-7908**

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | C.A. No.   25-7908 |
| | ) | D.C. No.   CR 24-236(A)-SPG |
| Plaintiff/Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SALVADOR PLASENCIA, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| _____ | ) | |

_____

## APPELLANT'S OPENING BRIEF
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

Honorable Sherilyn Peace Garnett
United States District Court Judge

Thomas P. Sleisenger
California State Bar 100254
P.O. Box 69844
West Hollywood, California 90048
Telephone: (310) 300-1314
Facsimile: (310) 861-0152
sleisengerlaw@yahoo.com

Attorney for Appellant
SALVADOR PLASENCIA

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    JURISDICTION, TIMELINESS, AND BAIL STATUS . . . . . . . . . . 2

I.    ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       1.    The Offense Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       2.    The Probation Officer's Sentencing Recommendation . . . . . . 7

       3.    Sentencing Submissions . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       4.    Probation Officer's Response . . . . . . . . . . . . . . . . . . . . . . 10

       3.    Sentencing Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.    GUIDELINE SECTION 3B1.1 IS MISAPPLIED TO
     THE SENTENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C.    THE PLEA AGREEMENT DID NOT SPECIFICALLY
     ESTABLISH THE CRIME OF ALTERING AND
     FALSIFYING RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.    SAFETY VALVE SHOULD HAVE BEEN APPLIED
     TO THE SENTENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**TABLE OF CONTENTS (Cont'd)**

PAGE

E.     DOUBLE COUNTING OCCURRED IN APPLYING BOTH THE OBSTRUCTION OF JUSTICE GUIDELINE AND PSEUDO COUNT 1A TO THE SENTENCE . . . . . . . . . . . . . . . . . 30

F.     UNWARRANTED DISPARITY EXISTED IN THE SENTENCE IMPOSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

ii

# TABLE OF AUTHORITIES

**CASES**                                                        **PAGE**

Braxton v. United States,
    500 U.S. 344 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-25

Gall v. United States,
    552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Rita v. United States,
    551 U.S. 338 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

United States v. Ameline,
    409 F.3d 1073 (9th Cir. 2005) (en banc) . . . . . . . . . . . . . . . . . . . . 18

United States v. Booker,
    543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 32, 35

United States v. Caperna,
    251 F.3d 827 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 32-33

United States v. Carter,
    560 F.3d 1107 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Contreras,
    593 F.3d 1135 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Cope,
    527 F.3d 944 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Fiorito,
    640 F.3d 338 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Garfinkel,
    29 F.3d 1253 (8th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Gellene,
    182 F.3d 578 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES (Cont'd)

**CASES**                                                      **PAGE**

United States v. Greene,
137 F.4th 1056 (9th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Harper,
33 F.3d 1143 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Holt,
510 F.3d 1007 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Houston,
217 F.3d 1204 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Johnson,
71 F.3d 539 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Katakis,
800 F.3d 1017 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Marquez,
280 F.3d 19 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. Martinez-Villegas,
993 F.Supp. 766 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Mejia-Pimental,
477 F.3d 1100 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United States v. Miranda-Santiago,
96 F.3d 517 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29-30

United States v. Montanez,
82 F.3d 520 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29

United States v. Nelson,
222 F.3d 545 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES (Cont'd)

**CASES**                                                                                 **PAGE**

United States v. Nielsen,
694 F.3d 1032 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 10, 20

United States v. Pham,
545 F.3d 712 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Rangel-Guzman,
752 F.3d 1222 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. Real-Hernandez,
90 F.3d 356 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United States v. Rolfsema,
468 F.3d 75 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Shrestha,
86 F.3d 935 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 18, 28

United States v. Singh,
979 F.3d 697 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Tai,
750 F.3d 309 (3rd Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 19, 21

United States v. Technic Services,
314 F.3d 1031 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Weinstock,
153 F.3d 272 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 21

**FEDERAL RULES**

Fed. R. App. P. 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Fed. R. Crim. P. 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES (Cont'd)

**FEDERAL STATUTES**                                                     **PAGE**

18 U.S.C. § 1519 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17

21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 991 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31-32

28 U.S.C. § 994 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**SENTENCING GUIDELINES**

U.S.S.G. § 1B1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23-24

U.S.S.G. § 1B1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

U.S.S.G. § 2D1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20,34

U.S.S.G. § 2J1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16, 31

U.S.S.G. § 3A1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 3B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 3B1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

U.S.S.G. § 3C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

## TABLE OF AUTHORITIES (Cont'd)

**SENTENCING GUIDELINES**                                    **PAGE**

U.S.S.G. § 3D1.2   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 3D1.3   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 3D1.4   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

U.S.S.G. § 3D1.5   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 3E1.1   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 4C1.1   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

25-7908

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | C.A. No . | 25-7908 |
| | ) | D.C. No. | CR 24-236(A)-SPG |
| Plaintiff/Appellee, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| SALVADOR PLASENCIA, | ) | | |
| | ) | | |
| Defendant/Appellant. | ) | | |
| _____ | ) | | |

## I.     JURISDICTION, TIMELINESS, AND BAIL STATUS

This Court has jurisdiction of this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  The district court had jurisdiction under 18 U.S.C. § 3231.  Judgment was entered on December 4, 2025.  Notice of Appeal was timely filed on December 16, 2025.  Appellant is presently serving his 30 month sentence.[1]  (CR 117, 119; ER-29-33, 484, 499).

---

[1] All references to "ER" shall be to the Excerpts of Record filed with this Court. All references to "PSR" shall be to the Sealed Excerpts of Record, which includes the Revised Presentence Investigation Report and related documents.  All references to "CR" shall be to the Clerk's Record.  "CR (Chavez)" refers to the Clerk's Record in United States v. Chavez, CR 24-4920-SPG (CDCA). "CR (Fleming)" refers to the Clerk's Record in United States v. Fleming, CR 24-417-SPG (CDCA).  RT refers to the Reporter's Transcript of the date immediately following that notation.

## II.    ISSUES PRESENTED

A.    Whether Guidelines Section 3B1.3 relating to an abuse of a position of trust and use of special skills supported the upward variance in the case?

B.    Whether the district court erred in applying 18 U.S.C. § 1519, the offense of destroying, altering or falsifying records to calculate the guideline range when the plea agreement and the change of plea did not specifically establish every element of the offense?

C.    Whether safety valve eligibility was shown by a preponderance of the evidence?

D.    Whether impermissible double counting occurred due to application of two guideline sections dealing with obstruction of justice?

E.    Whether unwarranted sentencing disparity occurred in the case?

## III.   STATEMENT OF THE CASE

On August 14, 2024, Salvador Plasencia was charged in a multi-count First Superseding Indictment with 21 U.S.C. § 846, conspiracy to distribute ketamine (Count I); 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i), possession with intent to distribute, and distribution of, ketamine (Counts IV through X); and 18 U.S.C. § 1519, altering and falsifying records (Counts XVII and XVIII).  (CR 30; ER-412-445. 492).

On July 23, 2025, appellant plead guilty to Counts VI, VIII-X.  A

3

statutory maximum of ten years applied to each count.  (RT 07/23/2025: 4-41; CR 76, 149; ER-344-381, 496, 501).

On December 3, 2025, appellant was sentenced to 30 months imprisonment on each count to be served concurrently, two years supervised release, a $5,600 fine and a special assessment of $400.  Since the term of imprisonment was above the range corresponding to an offense level of 15, appellant reserved the right to appeal the sentence.  (RT 12/03/2025:4-82; CR 76, 116-117, 150; ER-37-115, 403-404, 499, 501).

## IV.   STATEMENT OF FACTS

### 1.   The Offense Conduct

The Revised Presentence Report (PSR) discussed the factual basis contained in the plea agreement.  Raised in an unstable environment by a single mother who did not have the resources to support his career path, appellant nonetheless obtained a bachelor of science degree from the University of California, Riverside and a medical degree from UCLA.  He completed his residency in Internal Medicine and Pediatrics at the University of Oklahoma.  From 2016 to 2021, he worked as an emergency room physician, became a staff member at UCLA and worked at Urgent Care facilities in the San Fernando Valley.  Beginning in 2022, he started his own practice at Malibu Canyon Urgent Care in Calabasas.  (CR 76, 97;

4

110; ER-186, 189-193,395-400, 496-498; PSR-12-13, 27).

Patients from his private practice provided letter to the court describing appellant as a "thoughtful, cautious, caring, knowledgeable and attentive" physician who displayed "integrity, compassion, empathy, dignity and humility." Appellant often treated patients without health insurance and on a number of occasions, he provided treatment without receiving payment. (CR 97, 97-1; ER-188, 193-195, 224-269, 497).

Despite an unblemished record in the care of his patients, and praise from many of them, appellant struggled to keep his urgent care facility going. In September 2023, one of his patients provided an opportunity in referring him to Matthew Perry, the well-known actor who played Chandler Bing in the television sitcom *Friends* which aired for ten seasons on NBC. In an initial telehealth visit with Perry, appellant learned that Perry had been treated with ketamine, a Schedule III controlled substance, for severe depression. Perry's dependence on the drug led to addiction and his recreational use of the drug became extensive. (CR 110, 97; ER-187, 497-498; PSR-13).

Dr. Mark Chavez, who was later charged in a separate indictment, was a physician who ran his own ketamine clinic. Chavez was appellant's close friend and mentor, supporting him through the challenging and

difficult journey in becoming a physician. Chavez described the manner of treatment for the off-label use of ketamine and offered to obtain liquid ketamine and ketamine lozenges which appellant, in turn, would be provide to Perry. (CR 110, 97; ER-187, 497-498; PSR-13).

Despite any suggestion that appellant sought to cut corners or take undue risks in his practice, taking on Perry as a patient presented an opportunity to make enough money to pay overhead and expenses for his newly established medical practice in Casabas. Lacking clinical experience in the use of ketamine, appellant relied upon Dr. Chavez to provide guidance and support in treating this new patient. Thereafter, from September 30, 2023 to October 12, 2023, appellant sold twenty 5ml (100 mg/ml) vials of ketamine, ketamine lozenges and syringes to Perry. Most of the injections were performed by Perry's personal assistant, a man named Kenneth Iwamasa. Iwamasa was also later charged in his own indictment for purchasing ketamine from appellant and another source, not known to appellant. The source was codefendant Jasveen Sangha, a/k/a "the Ketamine Queen" and her separately charged coconspirator Erik Fleming, a drug treatment counselor who became an addict himself. On October 28, 2023, Perry died from the acute effects of ketamine obtained illegally from Mexico by Sangha and provided by Fleming. (RT 07/23/2025: 24-35;

CR 110, 149; ER-364-375, 498, 501; PSR-13-17).

Following Matthew Perry's death, federal search warrants were conducted at two residences associated with appellant, and a subpoena for medical records was served. Records seized relating to Perry's treatment were found to be incomplete and inaccurate, and some had been modified. Despite these discoveries, the U.S. Probation Officer (USPO) assigned to the case did not consider Perry to be a victim per se, nor did the officer find that appellant impeded or obstructed justice during the course of events. (CR 110; ER-498; PSR-15).

### 2. The Probation Officer's Sentencing Recommendation

Applying the grouping rules under Chapter Three of the Sentencing Guidelines, the USPO arrived at a base offense level of 6 for the four counts of conviction of conviction. Two levels were added under Guideline Section 2J1.2 based on a stipulation of the parties that appellant altered and falsified records during the government's investigation, in violation of 18 U.S.C. § 1519. Two levels were added under U.S.S.G. § 3B1.3 based upon a finding that appellant abused a position of trust during the commission of the offense. Two levels were added under U.S.S.G. § 3C1.1 for obstruction of justice for steps taken to conceal Perry's treatment as well as the failure to keep adequate medical records. Since the base offense level under

U.S.S.G. § 2J1.2 is 14, the adjusted offense level itself became 14 and the upward adjustment for obstruction of justice under Section 3C1.1 became moot. Two levels were added based on the multiple count adjustment and grouping rules under U.S.S.G. §§ 1B1.3 and 3D1.2-3D1.5 which applied to Count Group 1 (the drug counts of conviction) and Pseudo Count 1A (for dismissed Counts XVII and XVIII alleging the alteration and falsification of records). Subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1(a)-(b) and an additional two levels for zero-point offender status under U.S.S.G. § 4C1.1, the total offense level became 11 with a sentencing guideline range of 8-14 months. The USPO recommended a custodial sentence of 12 months. (CR 109-110, ER-498; PSR-16-23, 40-46 ).

### 3. <u>Sentencing Submissions</u>

The government concurred in the position taken by U.S. Probation with some exceptions. It requested two-level increases for both vulnerable victim under U.S.S.G. § 3A1.1 and aggravating role under U.S.S.G. § 3B1.1. The government claimed that the four-level increase made appellant ineligible for the safety valve because the fourth and fifth criteria had not been met. They also challenged appellant's right to a two-level reduction for zero point offender. Under the grouping rules, the multiple

count adjustment increased the offense level to 16. The government also requested an upward variance and a custodial sentence of 36 months. (CR 91, 98; ER-280-286, 144-179, 497-498).

In seeking a sentence of time served, appellant made his case for safety valve eligibility. To qualify, there was no requirement that a formal proffer take place although appellant offered to make one. Full disclosure of his involvement was shown in both the factual basis to the plea agreement and during the change of plea. Appellant challenged the application of the aggravating role adjustment, arguing instead for a minor role. He also claimed that the two-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1 constituted double counting since two-levels were already accounted for in applying Pseudo Count IA to the multiple count adjustment. Appellant agreed with U.S. Probation that he was a zero point offender under U.S.S.G. § 4C1.1. Because Chavez, Fleming and Iwamasa were still waiting to be sentenced, the defense prospectively objected to any unwarranted sentencing disparity which might occur. (CR 90, 149, 150; ER-34-129, 292-298, 498).

Appellant knew about the legitimate off-label use of ketamine from Dr. Chavez. It's use for chronic anxiety, depression and PTSD is widespread. Appellant also presented the expert opinion of Dr. Paul Wender, an

9

anesthesiologist and founder of the Bay Area Ketamine Clinic who has treated more than a thousand patients over a ten-year period. Dr. Wender described how at-home ketamine therapy typically involves intra-muscular injections that can be given by laypersons under the direction of a licensed clinician. (CR 90, 95, 97, 97-4; ER-186-222, 274-279, 297, 497).

Appellant concedes that in selling ketamine to Mr. Perry he was not pursuing a legitimate course of treatment and the ensuing death caused him a deep sense of regret and shame for what he did. He also voluntarily surrendered his medical license. The sense of guilt which appellant experienced is well documented in the defense sentencing submissions. Id.

### 4. Probation Officer's Response

In conformity with its sentencing recommendation letters, the PSR addendum was made in response to the government's request for an upward variance for vulnerable victim and aggravating role. The USPO did not find Mr. Perry to be a vulnerable victim due to drug addiction, citing United States v. Nielsen, 694 F.3d 1032, 1036, 1039 (9th Cir. 2012) (drug dependency alone does not generally establish "unusual vulnerability."). The USPO also disagreed that the aggravating role adjustment applied to the offenses of conviction. Therefore, in the USPO's opinion, the sentence should not go beyond the applicable guideline range. The government

10

could still had the option of seeking an upward adjustment under 18 U.S.C. § 3553(a)(1). (CR 88, 109-111; ER-497-498; PSR-3-4, 15, 40-46, 60-66).

In responding to the defense sentencing claims, the USPO found appellant to be an average participant who "did not direct others," and therefore no more culpable than coconspirators Chavez and Iwamasa for ketamine sold on the four dates in September and October 2023. The USPO was not in a position to recommend safety valve relief due to the government's position that he did not qualify but only on the claim that appellant failed to meet the fifth criterion relating to full disclosure of criminal involvement. As an average participant, the fourth criterion had been met. Because appellant did not maintain adequate medical records in the case, the USPO recommended the two level adjustment for obstruction of justice under U.S.S.C. § 3C1.1. In doing so, the USPO opined that there was no double counting despite the fact that obstruction was already accounted for in Pseudo Count IA. Handwritten notes of treatment did exist which suggested some degree of diligence on appellant's part in determining dosage levels and in instructing Iwamasa on how to give injections at home, The USPO also agreed with the defense that appellant was entitled to the two-level reduction for zero point offender. (Doc 111; ER-498; PSR-5, 47-55).

11

**5.      Sentencing Hearing**

Sentencing occurred on December 3, 2025.  The district court made some preliminary findings prior to argument.  It found that the factual basis in the plea agreement supported application of  "offense elements" more serious than the four counts of conviction for drug distribution.  To account for the degree of seriousness, the court adopted the parties stipulation that the base offense level should be raised to 14.  (RT 12/23/2025: 9-11; CR 150; ER-42-44, 501).

Under U.S.S.G. § 1B1.3(a), the court found appellant accountable for all reasonably foreseeable acts of codefendants Chavez and Iwamasa.  This included the 189 units of ketamine provided to Mr. Perry.  Any quantity less than 1,000 equates with a level 6 under the drug quantity table.  U.S.S.G. § 2D1.1(c)(17).  (RT 12/23/2025: 11-14; CR 150; ER-44-47, 501).

The district court found that appellant met the first four of five criterion for safety valve eligibility, which also meant that an upward adjustment for role did not apply.  The court agreed with the government that appellant did not meet the fifth criterion requiring full disclosure of all information and evidence concerning the offense that was part of the same course of conduct or common scheme of plan.  (RT 12/23/2025: 14; CR 150; ER-47).

Defense counsel objected to the denial of the safety valve because appellant truthfully provided all information and evidence in post-arrest statements, the plea agreement and during the change of plea. There was no additional information to provide. He objected to the two-level adjustment for obstruction of justice based on double counting because Pseudo Count IA already accounted for that. He was entitled to the zero-point offender adjustment since upward adjustments for aggravating role and vulnerable victim did not apply. (RT 12/23/2025: 19-20, 34-52; CR 150; ER-52-53, 67-85, 501).

In terms of safety valve eligibility, the court found that in the plea agreement appellant agreed that there was no legitimate medical basis for treating Mr. Perry with ketamine. In his mitigation video, however, appellant did make reference to treating Perry for depression. The court found this to mean, in the court's words that, "in terms of acceptance of responsibility, it seems like he is retracting somewhat." Defense counsel responded that Dr. Wender, the medical expert, discussed the legitimate off-label use of ketamine for depression. Moreover, appellant's treatment notes, while incomplete, showed that appellant sought to follow Dr. Wender's treatment protocol but failed to do so because he was overcome by greed which led to the reckless decisions he made. In mitigation

13

therefore, he did consult with defendant Chavez on how to proceed, performed proper intake procedures during the telehealth conference, gave the initial injection to Mr. Perry during the first meeting, and administered injections on later dates before having Iwamasa take over that task, all in conformity with Dr. Wender's treatment regimen involving intramuscular injections in the home of much smaller dosages than in surgical settings. Mindbloom, a well-known telemedicine company, has provided ketamine more than 600,000 times in the home settings which, in most cases, occurs "without any medical supervision whatsoever." (RT 12/23/2025: 36-42, 48-51; CR 95, 150; ER-69-75, 81-84, 497, 501; PSR-56-58).

In applying the grouping rules, the district court found the base offense level for Group 1 to be 6 with no upward adjustment for aggravating role. The court found that the factual basis disclosed a conspiracy between appellant, Chavez and Iwamasa. An "aggravating factor" was shown in appellant's interactions with Iwamasa and, in particular, the manner in which injections were performed in appellant's absence. The court therefore agreed with U.S. Probation that U.S.S.G. § 3B1.3 applied due to appellant's abuse of a position of trust as a licensed physician in failing to monitor the use of the drug which was provided without a legitimate medical purpose. (RT 12/23/2025: 67-69; CR 150; ER-100-102).

14

For the Group 1 offenses, the court added a two-level increase under U.S.S.G. § 3C1.1 for obstruction of justice due to the failure to maintain adequate medical records before and after the government's investigation, the former not a part of the calculation for Pseudo Count 1A. The court arrived at a total adjusted offense level of 10 for the Group 1 offenses and 14 for Pseudo Count 1A. Under U.S.S.G. § 3D1.4(a)-(c), the offense was increased two levels for an adjusted offense level of 16. Three levels were deducted for acceptance of responsibility and two levels for the zero-point adjustment. The court denied the request for application of the safety valve. The total offense level became 11 and the guideline sentencing range was 8-14 months. (RT 12/23/2025: 69-70; CR 150; ER-102-103).

Looking to Section 3553(a) factors, the court applied an upward variance and the sentence was justified due to appellant's breach of a fiduciary duty and exploitation of Mr. Perry's addiction by not performing legitimate medical treatment and in altering and keeping incomplete medical records. (RT 12/23/2025: 72-79; CR 150; ER-105-112, 501).

## V.    SUMMARY OF ARGUMENT

Appellant was not acting as a physician when he sold ketamine in this case. Instead, he was nothing more than a drug dealer, similar to the role played by defendants Chavez and Fleming. There was therefore no abuse of

a position of trust or use of a special skill. Matthew Perry was not seeking appellant's services as a physician. Instead, he was looking for reliable sources of supply because he was an addict which, according to U.S. Probation meant that he could not be considered a victim in the case under the Guidelines.

Under U.S.S.G. § 1B1.2(c), a sentencing court may rely upon an offense other than the offense of conviction when a plea agreement "specifically establishes" the additional offense. Because the elements of the additional offense were neither disclosed in the plea agreement nor at the change of plea, the underlying stipulated facts did not conclusively establish the intent element for the offense in question.

The district court failed to consider reliable evidence provided by appellant in support of his safety valve claim. Instead, the court erred in rejecting his claim based upon statements made in the sentencing mitigation video which the district court and the prosecutor found to be untruthful.

Double counting occurred after the sentence was increased under both U.S.S.G. § 3C1.1, the obstruction of justice guideline, and U.S.S.G. § 2J1.2, the guideline for 18 U.S.C. § 1519.

Disparate sentencing methodologies were employed by the district court in relation to the sentencing of three defendants, including Chavez,

16

Fleming and the appellant.

Accordingly, the sentence must be vacated and the case remanded for resentencing.

## VI. ARGUMENT

## A. STANDARD OF REVIEW

In reviewing sentences, this Court "must first ensure that the district court made no significant procedural error." Gall v. United States, 552 U.S. 38, 51 (2007). Whether the lower court complied with Fed. R. Crim. P. 32 is reviewed de novo. See United States v. Houston, 217 F.3d 1204, 1206-07 (9th Cir. 2000). Individualized reasons that justify a particular sentence must be shown. Rita v. United States, 551 U.S. 338, 356 (2007).

Review of a sentence above the guideline range is reviewed de novo. 18 U.S.C. § 3742(e); 18 U.S.C. § 3553(c)(2) (requiring a written statement of reasons under such circumstances). Sentencing calculations are reviewed under an abuse of discretion standard, but when the district court "imposes a sentence outside the Guidelines, the judge must explain why he has done so" and more significant justification under § 3553(a) is required for a major variance than for a minor one. Rita, 551 U.S. at 355-56; Gall, 552 U.S. at 50.

A district court's factual findings are reviewed for clear error and its

interpretation of safety valve provisions de novo.  United States v. Shrestha, 86 F.3d 935, 938 (9th Cir. 1996).  A defendant's initial burden of proving safety valve eligibility is by a preponderance of the evidence.  United States v. Nelson, 222 F.3d 545, 549 (9th Cir. 2000).

## B.  GUIDELINE SECTION 3B1.3 IS MISAPPLIED TO THE SENTENCE

Appellant was sentenced above the high end of the applicable guideline range for the four counts of conviction.  While properly observing that the Guidelines are advisory under Booker, the district court did not impose a sentence "sufficient, but not greater than necessary" to meet the requirements of 18 U.S.C. § 3553(a)(2).  See United States v. Ameline, 409 F.3d 1073, 1093 (9th Cir. 2005) (en banc).

Generally speaking, the Sentencing Commission does not advocate punishment on the basis of a person's status.  Where a defendant has not misused his training and special skills to facilitate the crime, the nature of the work involved is irrelevant in determining whether a departure outside the guideline range is justified.  U.S.S.G. § 5H1.2 (Policy Statement).  This observation is consistent with the directive under 28 U.S.C. § 994(e) that a defendant's education, vocational skills, and employment record in most cases has no bearing upon the imposition of sentence.  Id.

Rita v. United States, 551 U.S. 338 (2007), requires the court to

18

render a "reasoned sentencing judgment." Id. at 358. Had the court sentenced appellant without finding that he abused a position of trust as a physician, the sentence would have been substantially lower and in line with the recommendation made by U.S. Probation. Appellant was punished more severely on account of his professional status even though he did not abuse a position of trust or use a special skill in selling ketamine to Mr. Perry.

While medical doctors do hold positions of trust and have special skills, these attributes must be shown to have "contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making detection of the offense or the defendant's responsibility for the offense more difficult)." U.S.S.G. § 3B1.3, cmt. n.1 (2025); United States v. Tai, 750 F.3d 309, 318 (3rd Cir. 2014) ("[T]wo factors must be present to support the application of an upward Guidelines adjustment for use of a special skill: (1) the defendant possesses a special skill; and (2) the defendant used it to significantly facilitate the commission or concealment of the offense."); United States v. Gellene, 182 F.3d 578, 596 (7th Cir. 1999) (same). Emphasis upon appellant's position as a medical doctor was misguided because his credentials were not integral to the commission of the drug crimes. The result was not harmless because the departure was more than twice the high end of the applicable range. Moreover, the court's

19

justification was clearly inconsistent with its own finding that appellant was not treating Perry for depression or anxiety when he sold ketamine to him at an exorbitant price.

"To support the abuse of trust enhancement, a position of trust . . . . must be established from the perspective of the victim." United States v. Technic Services, 314 F.3d 1031, 1048 (9th Cir. 2002), overruled on other grounds, United States v. Contreras, 593 F.3d 1135, 1135-36 (9th Cir. 2010). In finding that Mr. Perry was not a "victim", the USPO relied upon United States v. Nielsen, 694 F.3d 1032, 1033 (9th Cir. 2012). While in that case this Court reversed a trial court's application of a vulnerable victim enhancement, its reasoning applies equally here because Mr. Perry was a drug addict seeking reliable sources of supply. He was not seeking medical treatment. Similar to the alleged vulnerable victim in Nielsen, Perry was not more deserving of societal protection by virtue of his drug dependency. Id. at 1037. (CR 110, 111; ER-498; PSR-3-4, 15).

21 U.S.C. § 841(a)(1) applies to anyone who distributes controlled substances and the status of the offender is irrelevant without more. See U.S.S.G. § 2D1.1(a), (b). While the application notes to Section 2D1.1 do identify the use of special skills under Section 3B1.3 as a basis for departure, the adjustment would not apply when the defendant possesses the

particular skill, but does not use it, or need to use it, to commit the offense. United States v. Tai, 750 F.3d at 318 (use of special skills requires that the "skill and credentials were the means by which [defendant] could participate"); United States v. Weinstock, 153 F.3d 272, 281 (6th Cir. 1998) (doctor "did not use his podiatric skills to facilitate the crime. Although performing unnecessary procedures requires a special skill, refraining from providing such services and falsely billing does not."); see also United States v. Garfinkel, 29 F.3d 1253, 1261 (8th Cir.1994) (affirming district court's finding that § 3B1.3 was inapplicable where psychiatrist used his managerial skills, and not his psychiatric skills, to commit the offense); United States v. Fiorito, 640 F.3d 338, 351 (8th Cir. 2011) (use of the adjustment "cannot be decided on the basis of generalities such as 'lawyers and doctors occupy positions of trust . . . .") (further citation omitted); U.S.S.G. § 2D1.1 cmt. n.23 (2025).

Appellant did not employ special skills in his commission of the offense. Prior to this case, he had never treated anyone with ketamine in a clinical setting. Instead, he relied upon defendant Chavez to use false prescriptions to obtain ketamine and if Section 3B1.3 applied to anyone, it was Chavez. See United States v. Johnson, 71 F.3d 539, 544 (6th Cir. 1995) (court should have determined if doctor used a special skill by writing

invalid prescriptions). Appellant's role was similar to defendant Fleming's, a a licensed alcohol and drug counselor, who obtained ketamine from defendant Sangha which he sold to Iwamasa. Appellant's 30 month sentence, more than two times longer than the high end of the applicable guideline range, was therefore substantively unreasonable and failed to reflect a proper weighing of § 3553 factors. (CR (Fleming) 1, 9; 43; CR (Chavez) 1, 3, ER-12-15, 316-318, 331-333, 458-461, 475-482).

The abuse of trust claim played a principal role leading to the upward variance in this case. Aggravating role and vulnerable victim adjustments were rejected by the court and remaining factors were already accounted for in raising the total offense level to 16. In order to avoid double counting, these other factors were likely not the basis for the upward variance although in the absence of written findings it is unclear what, if any, weight was given to them.

While appellant did occupy a position of trust as a physician, he did not abuse that position in committing the drug trafficking offenses. Mr. Perry saw appellant for what he was in this case, namely, a drug dealer who happened to have an "M.D." after his name. There was no fiduciary relationship in existence and Perry did not grant appellant any discretion as a treating physician. Moreover, appellant did not need to rely upon medical

22

training or special skills discussed in consultation with defendant Chavez when selling ketamine to Perry. See United States v. Harper, 33 F.3d 1143, 1151-52 (9th Cir. 1994) (imposition of aggravating role requires specific findings). The abuse of trust guideline should not have been applied in awarding an upward variance in this case.

**C.     THE PLEA AGREEMENT DID NOT SPECIFICALLY ESTABLISH THE CRIME OF ALTERING AND FALSIFYING RECORDS**

Guideline Section 1B1.2(c) allows a defendant to be sentenced based upon a stipulation in the plea agreement "that specifically establishes the commission of additional offense(s)" beyond the offenses of conviction. Id. The stipulation must contain facts in support of every element of the additional offense under consideration. When the stipulation is subject to more than one interpretation - one that satisfies every element of the crime, and one that does not - the stipulation fails to specifically establish the commission of the additional offense. Braxton v. United States, 500 U.S. 344, 351 (1991).

The district court erred here in arriving at a total offense level of 16 followed by an upward variance based on 18 U.S.C. § 1519 alleged in counts XVII and XVIII that were later dismissed at the time of sentencing. Because the stipulated facts did not specifically identify all elements of the

23

statute, review is for plain error. Braxton, Id. at 350-51; United States v. Greene, 137 F.4th 1056, 1062 (9th Cir. 2025).

In order to prove a violation of Title 18, United States Code, Section 1519, it must be shown that defendant "(1) knowingly committed one of the enumerated acts in the statute, such as destroying or concealing; (2) towards 'any record, document, or tangible object'; (3) with the intent to obstruct an actual or contemplated investigation by the United States of a matter within its jurisdiction." United States v. Singh, 979 F.3d 697, 715 (9th Cir. 2020), citing United States v. Katakis, 800 F.3d 1017, 1023 (9th Cir. 2015).

The elements were not contained in the plea agreement and the district court did not discuss the elements during the change of plea. When applying Section 1B1.2(c), the district court cannot assume that all of the elements have been shown. In the plea agreement, appellant stipulated that he failed to maintain adequate medical records, failed to provide all original medical records and knowingly provided incomplete or inaccurate records, some of which had been modified. While none of these acts demonstrate medical professionalism, there has been no adequate showing of how destruction or concealment materially impeded, obstructed or influenced the government's investigation. His intent in altering or destroying the records required further inquiry. In that sense, the plea agreement did not contain

24

facts that unambiguously established every element of the offense. See

Braxton, 500 U.S. at 351 (facts open to more than one interpretation cannot

specifically establish commission of an offense); see also United States v.

Cope, 527 F.3d 944, 951 (9th Cir. 2008) ("[A]ny lack of clarity in a plea

agreement should be construed against the government as drafter.").  This

was particularly troubling since the USPO found that appellant neither

impeded nor obstructed the investigation. (CR 110; PSR-15).

The multiple count adjustment should not have been applied to the

guidelines calculation because appellant's admissions under the plea

agreement were inadequate and the change of plea regarding application of

Section 1519 to the sentence was improvident.

**D.     SAFETY VALVE SHOULD HAVE BEEN APPLIED TO THE
         SENTENCE**

While no mandatory minimum was at play, the parties briefed and

argued application of the safety valve to the sentence.[2]  A two-level

downward adjustment is permitted if the defendant meets the criteria in 18

U.S.C. § 3553(f)(1)-(5) as follows:

> (1)    the defendant does not have --

---

[2]  The government recommended that defendant Chavez receive a two-level
reduction under the safety valve even though he did not face a mandatory
minimum in his case.  (CR (Chavez) 34; ER-139).

(A)    more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(B)    a prior 3-point offense, as determined under the sentencing guidelines; and

(C)    a prior 2-point violent offense, as determined under the sentencing guidelines:

(2)    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)    the offense did not result in death or serious bodily injury to any person;

(4)    the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines, and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5)    not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.  Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

18 U.S.C. § 3553(f).

Appellant's statements found in his mitigation video transcript gave

26

the district court pause because emphasis was placed on his attempts to follow proper protocol for the off-label use of ketamine. The court evidently believed that appellant's reference to the use of the drug to treat depression constituted a denial of criminal responsibility. Even though the court ultimately gave credit for acceptance of responsibility, it did not believe that appellant was sufficiently forthright to qualify for safety valve. This was an odd result because the rejection of an otherwise plausible account condones a degree of arbitrariness that turns the safety valve into a discretionary award under the Guidelines, like acceptance of responsibility. United States v. Miranda-Santiago, 96 F.3d 517, 529 (1st Cir. 1996). (RT 12/03/2025: 6; CR 95; ER-49. 497, 501; PSR-56-59).

Appellant's statements in the video transcript should not have barred consideration so long as, at some point, he provided to the court, "all information and evidence" known to him concerning the offenses to which he plead guilty. See United States v. Rangel-Guzman, 752 F.3d 1222, 1227 (9th Cir. 2014) (remand required despite inconsistencies in Rangel's trial testimony where government did not adequately explain its reasons for not supporting safety valve treatment).

In instances where a defendant has truthfully provided all information to the government, even a later recantation will not render him (or her)

27

ineligible.  United States v. Shrestha, 83 F.3d 935, 940 (9th Cir. 1996) (once

defendant has met his burden, the government is required "to show that the

information he has supplied is untrue or incomplete."); see also United

States v. Mejia-Pimental, 477 F.3d 1100, 1108 (9th Cir. 2007) (district court

erred as a matter of law by denying safety valve relief on improper

grounds).

The district court found that appellant satisfied the first four

safety-valve factors—the only dispute was whether he "truthfully provided

to the Government all information and evidence . . . concerning the offense

. . . ." 18 U.S.C. § 3553(f)(5).  The statute, however, does not require the

defendant to offer himself for debriefing.  Instead, on or before the time of

sentencing, the defendant must truthfully provide to the government the

information and evidence he has.  The manner of disclosure is not specified

in the criminal code, the sentencing guidelines, or the legislative history.

United States v. Mejia-Pimental, 477 F.3d at 1103 (defendant provided a

written statement after the government refused to conduct the proffer); see

also United States v. Real-Hernandez, 90 F.3d 356, 361 (9th Cir. 1996)

("any provision of information in any context" is sufficient); United States

v. Montanez, 82 F.3d 520, 522 (1st Cir. 1996) (rejecting the argument that

"the statute *requires* the defendant to offer himself for debriefing as an

automatic pre-condition in every case. . . .") (italics in the original).

The First Circuit case of Montanez made the observation that if an actual debriefing of the defendant was required to qualify for safety valve, prosecutors could extract intelligence without providing incentives in exchange for such information. If the defendant fails to reach the government's anticipated degree of forthrightness, the court may be told, that in the opinion of the prosecutor, the fifth prong has not been met. Montanez, 82 F.2d at 522. Such opinions, however, are merely subjective beliefs based on the government lawyer's professional bias. United States v. Marquez, 280 F.3d 19, 24 (1st Cir. 2002) ("[T]he government's lack of confidence in the proffer is insufficient.")

Appellant's admissions of guilt during initial questioning by law enforcement, in the plea agreement, at the change of plea hearing, and in other written submissions, support his eligibility. Just because his admissions were not necessarily the type of expressions of guilt the government envisioned is insufficient to deny relief. The sentencing court and "[t]he government cannot assure success simply by saying, 'We don't believe the defendant,' and doing nothing more." United States v. Miranda-Santiago, 96 F.3d 517, 529 (1st Cir. 1996), quoted in United States v. Martinez-Villegas, 993 F.Supp. 766, 773-74 (C.D. Cal. 1998) (the

29

government must offer "concrete" evidence to show defendants knew "more than their designated roles suggest.").

"When, as here, the defendant has properly preserved the sentencing error, the burden of demonstrating harmlessness falls on the government." Mejia-Pimental, 477 F.3d at 1109 (further citation omitted). The lost opportunity for a lower sentence was not harmless and failure to apply the safety valve requires a remand under Section 3553(f).

**E.    DOUBLE COUNTING OCCURRED IN APPLYING BOTH THE OBSTRUCTION OF JUSTICE GUIDELINE AND PSEUDO COUNT IA TO THE SENTENCE**

Impermissible double counting occurs when one part of the Sentencing Guidelines increases a defendant's punishment based upon a type of harm already addressed by application of another part of the Sentencing Guidelines. See United States v. Pham, 545 F.3d 712, 717 (9th Cir. 2008); United States v. Holt, 510 F.3d 1007, 1011 (9th Cir. 2007).

U.S.S.G. § 3C1.1 provides, in pertinent part, that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." Id.; see also U.S.S.G. § 2JI.2 (which applies a base offense level of 14 for obstructing or impeding a federal investigation under 18 U.S.C. § 1519).

30

The defense argued against application of both obstruction of justice guidelines  See U.S.S.G. § 3C1.1 cmt. n.7 (2025) (adjustment does not apply if defendant convicted of an offense covered by § 2J1.2 unless "*significant* further obstruction occurred during the investigation . . . . (e.g., if the defendant threatened a witness during the course of the prosecution for the obstruction offense)." (emphasis added).

Here, the two guidelines addressed the same conduct since both related to the destruction or alteration of medical records during events surrounding the death of Mr. Perry.  Because the same type of records were either altered or destroyed, both before and after the government served warrants and issued subpoenas, the type of obstruction which took place at both times was not only the same, but part of an unbroken chain of events, and the increase of four levels, rather than two, constituted impermissible double counting.

## F.      UNWARRANTED DISPARITY EXISTED IN THE SENTENCE IMPOSED

The Sentencing Reform Act of 1984 created the United States Sentencing Commission to "establish sentencing policies and practices for the Federal criminal justice system."  28 U.S.C. § 991(b)(1).  The Commission was charged with "avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of

31

similar criminal conduct . . . ."  28 U.S.C. § 991(b)(1)(B); see also United States v. Booker, 543 U.S. 220, 253 (2005) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity.").

18 U.S.C. § 3553(a)(6)  mandates avoidance of unwarranted sentencing disparities.  An evaluation of "unwarranted" sentencing disparity must take into consideration all Section 3553(a) factors, not just the Guidelines and accompanying policy statements.  Booker, 543 U.S. at 262.

Despite convictions for the same offense conduct, a gross disparity in defendant's sentence exists when compared to defendants Chavez and Fleming.  United States v. Caperna, 251 F.3d 827, 831-32 (9th Cir. 2001) (downward departure to equalize sentencing disparity is appropriate when "the co-defendant used as a barometer for judging the disparity was convicted of the same offense"); 18 U.S.C. § 3553(a)(6) (addressing unwarranted sentencing disparities among defendants with similar criminal backgrounds who commit similar criminal conduct).

At a minimum, the district court must use the same methodology in determining each sentence.  Once identified, the court must refer to record evidence in justifying disparate sentences.  Caperna, 251 F.3d at 831.  While disparities that stem from cooperation "are not unreasonable," and it is

32

"constitutionally prop[er]" for the government to "[f]ail[ ] to afford leniency to those who have not demonstrated those attributes on which leniency is based," United States v. Carter, 560 F.3d 1107, 1121 (9th Cir. 2009), a defendant should not be excessively penalized for deciding to plead guilty under a non-cooperation plea agreement or otherwise exercising constitutional rights. United States v. Rolfsema, 468 F.3d 75, 79 (1st Cir. 2006) (further citation omitted).

Defendant Chavez was appellant's mentor who acquired the ketamine appellant sold to Mr. Perry. In one sense, Chavez was higher in the chain of distribution by fraudulently obtaining the drug by misusing hie DEA registration to write prescriptions under another patient's name, through false certifications made to wholesale distributors and by stealing vials of ketamine from a locked storage box at his former clinic in San Diego. Chavez initially lied to LAPD and DEA investigators. His base offense level was 6 and four additional levels were initially recommended for abuse of a position of trust and obstruction of justice. Unlike appellant, he also had a prior arrest for possession of controlled substances. A two-level downward departure for cooperation and two levels for safety valve were recommended by the government. At sentencing, Chavez received a non-custodial sentence of eight months of home detention, three years of

33

supervision and 300 hours of community service.  (CR 97; CR (Chavez) 3, 34, 37; ER-133-143, 217-219, 319, 331-339, 497).

Appellant's conduct was also similar to defendant Fleming who sold ketamine to Mr. Perry for recreational use, and not for medical treatment. Fleming, who plead guilty to distribution of ketamine causing death, sold 50 vials of the drug to Perry's caretaker, Iwamasa.  Fleming was pushing an unknown, untested drug which defendant Sangha imported from Mexico. From his own training as a drug counselor, he was "acutely aware" of the dangers of ketamine.  Like Chavez, Fleming was not initially forthcoming with authorities.  After learning of Perry's death, he spoke to defendants Sangha and Iwamasa about concealing their past activities by deleting text messages and destroying evidence.  Prior to receiving a departure for his cooperation, Fleming's base offense level was 26 under § 2D1.1(a)(4).  He was also facing a statutory maximum sentence of 15 years.  Once the departure recommendation was accepted by the court, his adjusted guideline range went from 46-57 months to 27-33 months.  He received a custodial sentence of 24 months.  (CR 97; CR (Fleming) 9, 43, 50; ER-2-7, 14-23, 217-219, 447, 450, 461-463, 497).

The reasoning in <u>Booker</u> supports a sentence in appellant's case which more closely approximates what Chavez received (Fleming's conduct

was more serious - his base offense level was 20 levels higher).  This would be consistent with the advisory guidelines discussed in <u>Booker</u> which supports Congress' original objectives of "honesty," "uniformity," and "proportionality."  <u>Id.</u> at 264.

## VII.  CONCLUSION

Based on the foregoing, this Court should remand for resentencing.

Dated: June 3, 2026

<u>/s/Thomas P. Sleisenger</u>
THOMAS P. SLEISENGER
Attorney for Defendant-Appellant
SALVADOR PLASENCIA

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellant is aware of the following pending cases that may be related to this appeal: <u>United States v. Iwamasa</u>, CR 24-408-SPG (notice of appeal pending); and <u>United States v. Sangha</u>, C.A. 26-2450.

Dated: June 3, 2026

*/s/Thomas P. Sleisenger*
THOMAS P. SLEISENGER
Attorney for Defendant-Appellant
SALVADOR PLASENCIA

# CERTIFICATE OF COMPLIANCE

I certify pursuant to Fed. R. App. P. 32(a)(7) and Ninth Circuit Rule

32-1, the attached opening brief is proportionately spaced, has a typeface of

14 points or more and contains 7,755 words.

Dated: June 3, 2026

*/s/Thomas P. Sleisenger*
THOMAS P. SLEISENGER
Attorney for Defendant-Appellant
SALVADOR PLASENCIA

25-7908

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | C.A. No. 25-7908 |
| ) | D.Ct. No. CR 24-236(A)-SPG |
| Plaintiff/Appellee, ) | |
| ) | DECLARATION OF SERVICE |
| v. ) | |
| ) | |
| SALVADOR PLASENCIA, ) | |
| ) | |
| Defendant/Appellant. ) | |
| _____ ) | |

I, Thomas P. Sleisenger, hereby certify that on June 3, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeal for the Ninth Circuit by using the appellate ACMS system.

Participants in the case who are registered ACMS users will be served by the appellate ACMS system.

I further certify that some of the participants in the case are not registered ACMS users. I have sent via First-Class Mail, postage prepaid, a redacted copy of the foregoing document in conformity with BOP policy, to the following non-ACMS participants:

Salvador Plasencia
Reg. No. 30647-571
FCI Mendota
Federal Correctional Institution
P.O. Box 9
Mendota, CA 93640

*/s/Thomas P. Sleisenger*
THOMAS P. SLEISENGER